**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PATRICIA FOUBERT,**

        **Plaintiff,**

v.                                                                                  Case No. 8:05-cv-306-T-30TBM

**ALPHONSO JACKSON, SECRETARY,**
**DEPARTMENT OF HOUSING AND**
**URBAN DEVELOPMENT,**

        **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. #16), Declaration of Ferdinand R. Juluke, Jr. (Dkt. #15) with attachments, and Plaintiff's Response to Defendant's Motion for Summary Judgment and Memorandum (Dkt. #19) with attachments.  The Court, having considered the motion, response, memoranda, affidavits, attachments, pleadings, and being otherwise advised in the premises, finds that Defendant's Motion for Summary Judgment should be granted.

### Background

Plaintiff brings a one count complaint alleging an action for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1977a, and the ADEA, 29 U.S.C. §633a, for the intentional discrimination on the basis of race and age.  Plaintiff, Patricia Foubert (hereinafter referred to as "Plaintiff" or "Foubert"), is a white female and at the time of the events at issue was 57

years old. Defendant, Alphonso R. Jackson, Secretary, U.S. Department of Housing and Urban Development ("Defendant" or "HUD"), is the "Agency Head" of the United States Department of Housing and Urban Development, an Executive Agency of the Executive Branch of the Government of the United States. Plaintiff has been employed by Defendant since 1991 working as a Program Assistant, in the Multi-family HUB, in the Tampa office.

On December 3, 2002, Defendant published Vacancy Announcement 07-MSK-2003-0008Z, advertising the position of Project Manager, GS-1101-9/12 in Jacksonville, Florida. The vacancy notice was open to current HUD career/career-conditional employees in the competitive service. The announcement advertised one position, although HUD subsequently decided to hire two Project Managers under the announcement.

Plaintiff and several other employees submitted applications for the Project Manager position. The applications were initially reviewed, rated and ranked by Carmen Hamilton, a human resources specialist in HUD's Office of Human Resources in Kansas City, KS. Based on the rating and ranking of the applications, the Office of Human Resources created and delivered Selection Rosters to HUD's Jacksonville division, providing a list of applicants from which to choose. The Selection Rosters, together with the applications of the persons on the rosters, were provided to Ferdinand Juluke, the Director of the Multi-family Hub in Jacksonville, where the position was located. Since Rachel Parshall would be the team leader for the new employees, the applications were in turn given to Ms. Parshall, who worked in the Multi-family HUB, to review and provide a recommendation. Copies of the Selection Rosters and applications were also given to Ms. Parshall's supervisor, Timothy

Varley, for review and input. None of the applicants were interviewed. The applications did not provide the race, age or birth dates of any of the individuals. After reviewing the applications, Ms. Parshall recommended applicants Suechen Smith and Patricia Foubert for the two positions. However, pursuant to Ms. Parshall's affidavit (Dkt. #19-2), Mr. Juluke was the ultimate decision maker when it came to staffing. Also, pursuant to the same affidavit, Ms. Parshall states:

> After I made my recommendation, it went back and forth. It went to Tim. Then Ferd told me no on Pat Foubert and Suechen Smith, that he was going with Karyl Fischer and Kathy Willett...Initially, when Ferd told me Pat Foubert was a "No", I asked him why. He eventually told me, when I pointed out that she had done occupancy reviews and had gotten an outstanding performance review, that he doubted whether she had actually done occupancy reviews: He told me "I am leery about her having put that down. I don't think she either did them or is not being truthful about it." He also told me that she is a problem employee. He did not attribute that to anyone directly, he said it as if he knew it for a fact. I guess he must have heard that from Diane Toney, Pat's supervisor at the time.

Finally, Ms. Parshall states that age was not a consideration in the selection and that she was unaware of the ages of any of the candidates at the time of the selection process.

In Mr. Juluke's affidavit offered to the EEO Investigator (Dkt. #19-2), Mr. Juluke states that Timothy Varley was the selecting official, but that he got input from Mr. Juluke. According to Mr. Juluke, Mr. Varley wanted Suechen Smith and Karyl Fischer. In looking at the educational levels of the individuals, Mr. Juluke realized that Suechen Smith had a degree in accounting, which was a determining factor in selecting her; Mr. Juluke also selected Karyl Fischer. Mr. Juluke admits that he spoke to Karen Jackson-Sims, Field Office Director in Tampa, and Diane Tomey, Plaintiff's supervisor, prior to making his selection.

According to Mr. Juluke, Ms. Jackson-Sims told him an unfavorable story about Plaintiff concerning a confrontation between Plaintiff and an in-house client making copies of documents for a closing in September of 2000. Mr. Juluke also spoke to Ms. Toney who did not make a recommendation either way as to whether to select Plaintiff. However, Mr. Juluke denies that the applicants' age played any role in his decision. Mr. Juluke did not know their ages until after Plaintiff filed a complaint with the EEOC.

On February 7, 2003, Karyl Fischer (white female) and Suechen Smith (Asian female) were selected for the Project Manager positions. At the time of the selections, Karyl Fischer was 55 years old[1] and Suechen Smith was 51 years old.

In support of Plaintiff's age discrimination claims, she claims that Defendant's failure to select her for the position was the result of discrimination based on her age, and her race. Plaintiff claims that Sherry Norton, president of AFGE Local Union #3412 told her that Plaintiff would not be selected for any promotion, irrespective of her scores, but refused to tell her why she was of this opinion. Plaintiff also claims that when she asked Everett Rothschild, Union Vice President, why she was not promoted, he told her "it was the color of my skin." Several years prior to the vacancy announcement at issue, in 1999, Plaintiff applied for the Upward Mobility program and younger people who were local were picked, rather than Plaintiff. Also in 1999, Plaintiff claims that she saw a video in which Joe Smith,

---

[1] In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff readily admits that they do not and never have challenged the selection of Karyl Fischer. Notably, Karyl Fischer is only two years younger than Plaintiff and is the same race as Plaintiff, thus Plaintiff cannot state a prima facie case of age discrimination or race discrimination based on Defendant's selection of Ms. Fischer.

a Washington HUD official, said that HUD wanted only young people, or words to that effect, that the old people should take a buyout or early retirement - they needed "new blood." Also in 1999, Plaintiff claims that Mr. Juluke told Plaintiff that he was retiring in three years or so, and that maybe "we (Barbara Black, Everett Rothschild, and I) should consider retiring." Plaintiff admits, however, that Mr. Varley never said anything to her about her age.

In support of her racial discrimination claims, Plaintiff claims that Mr. Juluke (African American) and Ms. Jackson-Sims (African American) discriminated against her in favor of Ms. Smith (Asian). Plaintiff asserts that although Ms. Smith is a member of a different minority class, Mr. Juluke and Ms. Jackson-Sims treated Ms. Smith more favorably because she was a minority and was known to have dated an African American HUD employee. Also, Plaintiff claims that Smith was treated more favorably because HUD paid for some of her college classes and allowed her to do homework at work.

Plaintiff further claims that there was a discriminatory policy with respect to promotion of white employees. Plaintiff has offered several work force profile lists (See Dkt. #19-2, Pages 66-74) in support of her claim and asserts that such documents tend to show that white employees who were promoted to Project Manager got their positions as a result of a lateral transfer from another office where they already held the position, whereas the only other employees who got these positions were minorities. Additionally, Plaintiff offers the Declaration of Frank Ferlita in support of this argument, in which Frank Ferlita states, in pertinent part:

> It is commonly known in Region IV, that there is a "black" hierarchy at HUD that makes selections happen. That hierarchy consists of Alphonso Jackson, then Deputy Secretary and not HUD Secretary, Sharon Kelley, the Deputy Regional Administrator of Region IV, Ferdinand Juluke and finally, Karen Jackson Sims. All of these folks are black. All are very close friends.[2]

Plaintiff argues that such discriminatory practices are promoted by HUD's Affirmative Employment Plan (which expired in September of 2003). Plaintiff contends that her non-selection in February of 2003, was based in part on HUD's adherence to the Affirmative Employment Plan.

Defendant seeks summary judgment under Fed.R.Civ.P. 56. Defendant argues that the two successful applicants were both also in their 50's, were no more than two and six years younger than plaintiff, and one of the two applicants was the same race as Plaintiff. Further, Defendant argues that Plaintiff has failed to produce sufficient evidence to support an inference that Defendant based its employment decision on an illegal criterion. In addition, Defendant argues that the applicants selected were better qualified than Plaintiff for the position, and Plaintiff had a history of performance issues including receiving written counseling concerning her behavior. Finally, Defendant argues that Plaintiff is unable to establish that the reasons for the selection were pretext for discrimination.

## **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[2] Dkt. #19-3.

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  <u>Id</u>.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  <u>Id</u>. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  <u>Anderson</u>, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. <u>Fernandez v. Bankers Nat'l Life Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." <u>Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248;

Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## Legal Analysis

**I.   Age Discrimination.**

Plaintiff alleges that Defendant denied her a promotion in favor of a younger, less qualified employee as a result of discrimination based on age in violation of the ADEA.

**A.   Age Discrimination in Employment Act ("ADEA").**

The protections of the ADEA are limited to persons over the age of 40. The ADEA makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"In proving an age discrimination claim, a plaintiff can establish a prime facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for circumstantial evidence." Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).

**1.   Direct Evidence.**

Direct evidence is evidence which, if believed, proves the existence of the fact in issue without inference or presumption." Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321,

1323 n. 11 (11th Cir. 1998). However, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination." Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

In the instant case, after reviewing the record, the Court concludes that Plaintiff has not established any direct evidence of age discrimination. Thus, we will examine whether Plaintiff has established a prima facie case of age discrimination based upon circumstantial evidence.

### 2.     **Circumstantial Evidence.**

When a plaintiff does not present direct evidence of age discrimination, he "relies on circumstantial evidence and invokes the burden-shifting framework established in" McDonnell Douglas. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 (11th Cir. 2001). In McDonnell Douglas, the Supreme Court held that the plaintiff generally has the burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Establishing a prima facie case of discrimination creates a presumption of unlawful discrimination, and the employer must come forward with evidence of a legitimate non-discriminatory reason for its decision. Id. When the employer expresses one or more legitimate reasons for its actions, the presumption of discrimination evaporates, and the plaintiff must raise a genuine issue of material fact as to whether the reasons offered by the defendant are pretextual. Id. at 804. In order to establish pretext, a plaintiff must present evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by

the employer were not the real reasons for the adverse employment decision." Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

In order to prevail in an ADEA action, a plaintiff must first prove all prongs of a four-part test: (1) that plaintiff was a member of the protected group of persons between the ages of forty and seventy; (2) that plaintiff was subject to an adverse employment action; (3) that a substantially younger person filled the position; and (4) that plaintiff was qualified to do the job from which she was rejected. See Pace v. Southern Railway System, 701 F.2d 1383, 1386 (11th Cir. 1983). The underlying inquiry is "whether an ordinary person could reasonably infer discrimination from the facts shown if those facts remain unrebutted." Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435 (11th Cir. 1985). A determination of whether a prima facie case has been established "turns on whether the plaintiff has presented sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." Pace, 701 F.2d at 1307; see also Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997) (Eleventh Circuit held that in an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant-employer based its employment decision on an illegal criterion.)

The parties do not dispute that: Plaintiff was over 40; she was not promoted; one of the persons promoted was significantly younger (6 years)[3]; and Plaintiff was qualified for the

---

[3] The Eleventh Circuit has held a replacement who is only three years younger is sufficient to establish a prima facie case. See Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997); see also Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (concluding that five year age difference between plaintiff and his replacement was sufficient
(continued...)

position. However, other than a reference to unrelated events and comments occurring in 1999[4] (over 4 years prior to the promotion process at issue), Plaintiff has offered no relevant or timely evidence to provide a basis for an inference that age was a factor in the decision not to promote her in 2003. Moreover, two of the HUD decision makers involved in the selection, ranking, and rating process have given sworn statements that no one was aware of the ages of any of the applicants at the time of the selection process. Of further relevance, the application forms did not request information regarding the applicant's age or birth date. While Plaintiff does not contest the selection of Karyl Fischer, the Court can not ignore the fact that Ms. Fischer who was 55 years old at the time (only two years younger than Plaintiff) was selected to fill the other position for Project Manager.

For these reasons, the Court concludes that Plaintiff has not presented direct or circumstantial evidence that would provide a basis for an inference that age was a factor in the employment decision at issue. Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claims of age discrimination.

**II.   Race Discrimination.**

---

[3](...continued)
to support a prima facie case of age discrimination).

[4] Plaintiff refers to: being rejected for the Upward Mobility Program in 1999; seeing a HUD video in 1999 referencing the need for "new blood", and witnessing a comment by Mr. Juluke, also allegedly made in 1999, relating to his intention of retiring after three years or so and mentioning that Plaintiff and a couple other employees might want to consider retiring in a few years also.

Title VII prohibits employers from discriminating on account of race, gender, or national origin when hiring, discharging, and promoting its employees. See 42 U.S.C. §2000e-2(a)(1). In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. See Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Because direct evidence of discrimination can be difficult to produce, the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), created a framework on the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. Where, as here, there is no direct evidence of racial discrimination, "the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion. Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1441 (11th Cir. 1998). Pursuant to the Supreme Court's decision in McDonnell Douglas, to prove discriminatory treatment through circumstantial evidence: (1) a plaintiff must prove a prima facie case of discrimination; (2) then the burden shifts to the defendant to show a nondiscriminatory reason for the employment action; and (3) then the burden shifts back to the plaintiff to establish pretext. See McDonnell Douglas.

**A.     Plaintiff's initial burden to prove a prima facie case of discrimination.**

In order to establish a prima facie case of race discrimination with respect to a promotion, plaintiff must show: (1) she was a member of a protected group, (2) she was qualified for and applied for a promotion, (3) despite being qualified for the position, she was not selected, and (4) another equally or less qualified person who was not a member of the

protected minority was promoted.  Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000); Carter v. Three Springs Residential Treatment, 132 F.3d 635, 644 (11th Cir. 1998); Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001); Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir. 2000).

Plaintiff has sufficiently established three of the four prongs required to bring a prima facie case of race discrimination: Plaintiff is a member of a protected group; Plaintiff was qualified for and applied for a promotion, and despite being qualified for the position, Plaintiff was not selected.  The Court will now examine the remaining prong of whether Plaintiff has established that another equally or less qualified person who was not a member of the protected minority was promoted.

        **1.**      **Inquiry as to whether Smith was equally or less qualified**.

Plaintiff, a white female, contests the selection of Ms. Smith, an Asian female, for the position of Project Manager.  Ms. Smith has been employed by HUD since 1990.  At the time of the vacancy announcement, Smith had 8 years experience as a Program Assistant (GS-7 level) and 5 years experience as an Operation Analyst (GS-9 level).  Smith received a rating score of "13" by the Office of Personnel Training.  Smith was ranked higher than Plaintiff because she already had GS-9 level experience (she had also applied at GS-11 level, and had time-in-grade, but not sufficient experience to qualify for GS-11).  In May of 2003, Smith received a bachelor of arts degree with an emphasis in accounting.  Smith's HUD experience

was mainly in the Single-Family Housing department, not Multi-Family Housing. Smith had also recently received an "outstanding" review and good recommendations by supervisors, Jim Branson and Mickie Sisak.

By comparison, Plaintiff has been employed by HUD since 1991. At the time of the vacancy announcement, Plaintiff had approximately 2 years experience as a Secretary (GS-5 level), 3 years as a Production Loan Clerk/Program Assistant (GS-5/6 level), 3 years as a Realty Program Assistant, and 4 years as a Multifamily Asset Management Program Assistant (GS-7 level). Plaintiff received a rating score of "10" by the Office of Personnel Training. Plaintiff's formal education is limited to attendance at the HUD Training Academy, North Shore Community College, the American Real Estate Academy, and Chelsea Senior High School. Plaintiff's HUD experience was mainly in the Multi-Family Housing department. Plaintiff had also recently received an "outstanding" review.

Upon a review of Plaintiff's and Smith's employment history, education and employee reviews, the Court concludes that Smith was "more qualified" than Plaintiff for the position at issue. Smith had 13 years of experience with HUD [compared to Plaintiff's 12 years of experience]; Smith worked at higher employment levels throughout her career with HUD as a Program Assistant (GS-7) and Operation Analyst (GS-9) [compared to Plaintiff's lower level positions as a Secretary (GS-5), Production Loan Clerk/Program Assistant (GS-5/6 level), and Realty Program Assistant, and Multifamily Asset Management Program Assistant (GS-7)]; Smith received a rating score of "13" by the Office of Personnel Training [compared to Plaintiff's rating of "10"]; in May of 2003, Smith received a bachelor of arts degree with

an emphasis in accounting [compared to Plaintiff's high school education, with a general reference of attendance at a community college].

Where a selected employee had a four year degree and more experience as a plant manager, plaintiff, who did not have a four year degree, failed to show that selected employee was an equally or less qualified employee.  See Hithon v. Tyson Foods, Inc., 144 Fed. Appx. 795, *3 (11th Cir. 2005).  Where selected employees possessed both paramedic certificates and a four-year college degree, plaintiffs, who did not have a college degree or paramedic certificates, could not establish that they were equally or more qualified than the promoted individuals.  See Jerelds v. The City of Orlando, 194 F.Supp.2d 1305, 1330 (M.D. Fla. 2002).  Nor did the rejected candidates present any evidence demonstrating that the paramedic certification and college degree had no direct relationship to the performance of the desired position.  See id.

Plaintiff has argued that Smith's HUD experience was primarily in the Single-Family Housing Division, rather than the Multi-Family Housing Division, but has not provided any evidence supporting an argument that Smith's Single-Family HUD experience would not transfer to a Multi-Family HUD position.  Nor has Plaintiff provided evidence demonstrating that Smith's bachelor of arts degree with an emphasis in accounting had no direct relationship to the performance of the Project Manager position.

For these reasons, the Court concludes that Plaintiff has failed to show that an equally or less qualified employee who was not in Plaintiff's protected class was promoted to the position.  Since Plaintiff has failed to establish a necessary prong of a prima facie case of

race discrimination, the burden does not shift to Defendant to show a nondiscriminatory reason for the employment action. Thus, it is not necessary for this Court to address whether Defendant has shown a legitimate, nondiscriminatory reason for its decision not to promote Plaintiff, or whether such reason was pretextual. Due to Plaintiff's failure to meet an essential element of her prima facie case, the Court grants summary judgment to Defendant with respect to Plaintiff's race discrimination claim.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. #16) is GRANTED.

2. The Clerk is directed to CLOSE this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on July 21, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-306.msj 16.wpd